USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1251 UNITED STATES, Appellee, v. LISA BURNS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Barbadoro,* District Judge. ______________ ____________________ William Maselli, by Appointment of the Court, on brief for ________________ appellant. Jay P. McCloskey, United States Attorney, and Michael M. DuBose, _________________ _________________ Assistant United States Attorney, on brief for appellee. ____________________ February 8, 1994 ____________________ ____________________ *Of the District of New Hampshire, sitting by designation. Barbadoro, District Judge. Lisa M. Burns, a Barbadoro, District Judge _________________________ United States Post Office employee, was tried and convicted on two counts of embezzling mail in violation of 18 U.S.C. 1709. She argues that we should reverse her conviction because: (1) the prosecutor violated Fed. R. Crim. P. 16(a)(1)(A) by failing to timely disclose a postal inspector's report summarizing statements Burns made to one of her supervisors; (2) the District Judge erroneously admitted other allegedly involuntary statements Burns made to the investigating postal inspector; (3) the Judge mistakenly read from a superseded indictment during his preliminary jury instructions; (4) the Judge improperly excluded on hearsay grounds certain testimony Burns offered to impeach the testimony of another witness; and (5) the Judge's jury instruction concerning Burns' intoxication defense unconstitutionally required her to prove that she acted without criminal intent. Finding no reversible error in these claims, we affirm her conviction. I. Background I. Background ______________ Lisa Burns first came to the attention of United States Postal Inspectors after Inspector Robert Bethel placed a routine "test mailing" at the Naples, Maine -2- 2 post office where Burns worked. "Test mailing" is the Postal Service's method of determining whether employees at certain randomly-selected post offices are properly handling the mail. The "test mail" is an envelope addressed to a fictitious person at a non-existent post office box at the targeted post office. The envelope is typically marked "refund inside" and contains a rebate check made out to bearer. The return address on the envelope specifies a post office box in the New England area controlled by the Postal Service. If the mailing is handled properly, it is usually marked "undeliverable" and returned within two weeks. If it is not returned, the postal inspector targets the post office for additional test mailings and attempts to determine what happened to the initial mailing. The first test mailing Bethel placed at the Naples post office contained a $5 rebate check. When the mailing was not returned, Bethel recovered the cashed rebate check and determined that it had been endorsed by Burns. Bethel then tried to tempt Burns with a second mailing containing a $10 rebate check. It also disappeared. This time, Bethel discovered that the rebate check apparently had been endorsed by Karen King, Burns' roommate. -3- 3 After failing to entice Burns with yet another test mailing, Bethel confronted her in the parking lot of the post office. He identified himself, described the nature of his investigation, advised Burns that she was not under arrest, and asked her whether she would be willing to speak with him. She agreed, and they returned to the post office. Before beginning his questioning, Bethel read Burns her Miranda rights from a Postal Service waiver form. _______ He also had her initial each printed statement after it was read and sign the form at the end. Burns then made several incriminating statements in response to Bethel's questions. At the end of the interview, she wrote out and signed a statement memorializing her admissions. Burns later sent Bethel a supplemental statement in which she alleged that she had an imperfect recollection of the incidents in question because she was an alcoholic and was intoxicated when she took the test mailings. At trial, the government's case rested primarily on Bethel's testimony and Burns' admissions. In response, Burns pleaded entrapment and intoxication. The jury ultimately rejected her defenses and found Burns guilty on both counts. She was later sentenced to 60 days confinement and fined $500. -4- 4 II. Discussion II. Discussion _______________ A. Pre-Trial Disclosure Pursuant to Rule 16 ________________________________________ Burns' primary argument on appeal is that the prosecutor violated Rule 16(a)(1)(A) by failing to disclose prior to trial a report summarizing statements Burns made to one of her supervisors. In pertinent part, the rule provides that: Upon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: . . . that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . . . Burns argues that her supervisor was a "government agent" and that she made her statements "in response to interrogation." Thus, she contends that the prosecutor was obligated to disclose the report pursuant to her pretrial request. We reject Burns' arguments because we determine -5- 5 that Burns' supervisor was not a "government agent" as that term is used in Rule 16.1 Rule 16 does not define "government agent." We therefore must choose between the two plausible definitions of the term. Viewed broadly, the term encompasses anyone who performs duties of a public nature on behalf of the executive, legislative or judicial branches of the local, state or federal government. Black's Law ____________ Dictionary 695-96 (6th ed. 1990) (defining "government" and __________ "government agent"). Burns' supervisor would qualify as a government agent under this definition because he was ____________________ 1 We also reject Burns' additional assertion that, because Bethel reduced the supervisor's oral summary of defendant's statements to writing, this written summary constitutes a recorded statement of the defendant subject to disclosure "regardless of who the statement was made to or how it was occasioned." Although the first subpart of Rule 16(a)(1)(A) makes a defendant's "written or recorded statements" discoverable irrespective of whether they were made in response to interrogation by a known government agent, we agree with the Second Circuit Court of Appeals that an oral statement does not become "written or recorded" merely because a government agent made a written summary of the statement before trial. In Re United States, 834 F.2d ____________________ 283, 284-85 (2d Cir. 1987). See also, e.g., United States ___ ____ _____ _____________ v. McCure, 734 F.2d 484, 492-93 (10th Cir. 1984). This is _________ especially true where, as here, the statement was actually heard by a third party and then reported to the government agent at a later date. See In Re United States, 834 F.2d at ___ ___________________ 285-86. Finally, because we agree with the trial judge that Burns' supervisor was not a government agent, we need not decide whether Burns' statements were made "in response to interrogation." -6- 6 employed by the United States Postal Service when the statements were made. The competing definition is narrower and more colloquial. It includes only persons with criminal law enforcement responsibilities or their agents. See, ____ e.g., Hoffa v. United States, 385 U.S. 293, 295, 305-07 ____ ________________________ (1966) (using "government agent" to describe an undercover law enforcement officer); Illinois v. Perkins, 496 U.S. 292, ___________________ 294, 297, 299 (1990). Under this definition, Burns' supervisor would not qualify as a government agent since he had no criminal law enforcement responsibilities and was not acting as an agent of the postal inspectors when Burns made the incriminating statements. The choice between these two definitions presents a question of law which we review de __ novo. United States v. O'Neil, No. 93-1325, 1993 U.S. App. ____ ________________________ LEXIS 32612, at *7 (1st Cir. Dec. 15, 1993). We begin our analysis with the axiom that language must be interpreted in context. Kelly v. Robinson, _________________ 479 U.S. 36, 43 (1986). As we have recently acknowledged, "[t]erms in an act whose meaning may appear plain outside the scheme of the statute can take on a different meaning when read in their proper context." Greenwood Trust Co. v. ______________________ Massachusetts, 971 F.2d 818, 825 (1st Cir. 1992), cert. _____________ _____ denied, 113 S. Ct. 974 (1993). ______ -7- 7 Here, by limiting the prosecution's disclosure obligation to summaries of relevant statements that are made by a defendant "in response to interrogation," the Rule's surrounding text strongly supports the narrow reading of the term. When Rule 16 was amended in 1974 to include the language at issue, the amendment's drafters were working in a milieu in which courts were required to give special attention to statements obtained in response to interrogation by law enforcement officers. See, e.g., __________ Miranda v. Arizona, 384 U.S. 436 (1966). Obviously, Miranda __________________ _______ and its progeny require suppression of a defendant's statements obtained through custodial interrogation unless the defendant properly waived his or her Miranda rights. _______ Id. at 444-45. Moreover, even if a defendant was not in __ custody, his or her statements might still be suppressed if they were coerced through interrogation by law enforcement officers. See, e.g., Rogers v. Richmond, 365 U.S. 534, 544 _________ ___________________ (1961); Davis v. North Carolina, 384 U.S. 737, 740-42 _________________________ (1966); Beecher v. Alabama, 389 U.S. 35, 36 & n.2 (1967). ___________________ See also Beckwith v. United States, 425 U.S. 341, 347-48 ___ ____ __________________________ (1976) (citing Rogers and Davis for the proposition that ______ _____ statements resulting from noncustodial interrogation may be suppressed if involuntary). Such concerns did not then and -8- 8 do not now apply to statements obtained from a defendant by persons without law enforcement responsibilities, regardless of whether the statements were obtained through interrogation. See, e.g., Yates v. United States, 384 F.2d _________ ______________________ 586, 587-88 (5th Cir. 1967) (hotel manager who tipped FBI); United States v. Antonelli, 434 F.2d 336-38 (2d Cir. 1970) ___________________________ (private security guard); United States v. Eide, 875 F.2d ______________________ 1429, 1431, 1433-34 (9th Cir. 1989) (defendant's supervisor at federal Veterans' Administration Medical Center); United ______ States v. Pullen, 721 F.2d 788, 790-91 (11th Cir. 1983) _________________ (bank officials). Thus, if "government agent" refers only to law enforcement officials or persons acting on their behalf, the potential for pretrial suppression of statements that resulted from interrogation by such individuals provides a rational basis for limiting the government's pretrial disclosure obligation to summaries of statements made "in response to interrogation." The rational basis for the interrogation limitation disappears, however, if "government agent" is construed to mean government employee. Besides enjoying strong contextual support, the narrow meaning of "government agent" avoids the arbitrariness that would result if the term were defined -9- 9 more expansively. We agree that the broad reading of "government agent" gives maximum deference to the policies underlying Rule 16's mandatory disclosure rules. See United ___ ______ States v. Alvarez, 987 F.2d 77, 84-85 (1st Cir.), cert. __________________ _____ denied, 114 S. Ct. 147 (1993) (Rule 16's mandatory ______ disclosure provisions promote "the fair and efficient administration of criminal justice by providing the defendant with sufficient information upon which to base an intelligent [] plea; by minimizing the undesirable effect of suppression at trial; and by contributing to the accuracy of the fact finding process."). Once it is divorced from the law enforcement context, however, this definition is problematic because it deteriorates into a completely arbitrary limitation on the prosecution's duty to disclose. Under the term's broad reading, for example, the prosecution would be obligated to disclose portions of a report summarizing statements the defendant made to a government cook, but not those portions of the same report that summarize statements the defendant made to another cook at a privately-run diner. Moreover, given that Rule 16 requires that the individual to whom the statements are made be "then known to the defendant" as a government agent, the prosecution would only be obligated to disclose the -10- 10 defendant's statements to the government cook if the defendant knew when she made the statements that the cook was a government employee. The arbitrariness of such distinctions is obvious. Consistent with the rule of construction that legislative enactments "should be interpreted to avoid untenable distinctions and unreasonable results whenever possible," American Tobacco Co. v. Patterson, 456 U.S. 63, _________________________________ 71 (1982); Kelly v. United States, 924 F.2d 355, 361 (1st _______________________ Cir. 1991), we refuse to construe "government agent" in a way that requires such arbitrary line drawing when a less problematic reading of the term is also plausible. Here, the narrower definition of "government agent" limits the government's pretrial disclosure obligation to summaries of those statements that are most likely to require a pretrial ruling before they are admitted into evidence. By doing so, this definition serves the policies underlying Rule 16 without irrationally requiring the prosecution to base its disclosure determination on whether the defendant knows that the person to whom she is making her statements is a government employee. We therefore agree with the trial -11- 11 court that, as used in Rule 16, "government agent" refers onlyto lawenforcement agentsorpersons actingon theirbehalf.2 B. Voluntariness of Burns' Confession __________________________________ Burns next challenges the District Judge's denial of her motion to suppress the oral and written statements she made in response to questioning by Inspector Bethel. She alleges that Bethel promised not to arrest her if she cooperated with his investigation. She also claims that Bethel's questioning was inherently coercive because it occurred at the one-room post office in the presence of customers and her supervisor. Finally, she contends that she was in a "weakened psychological state" during the interview because she was an alcoholic who had stopped drinking only two weeks earlier. Based upon the totality of these factors, Burns claims that her statements were involuntary and therefore should have been suppressed. In determining the voluntariness of a confession, courts must apply the "totality of the ____________________ 2 In reaching this conclusion, we do not endorse the prosecution's decision to withhold Bethel's report. As the advisory committee notes to the Rule point out, "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled." Fed. R. Crim. P. 16 advisory committee's note (1974 amendment) (West 1993). -12- 12 circumstances test." Arizona v. Fulminante, 499 U.S. 279, _____________________ 286 (1991). Although the ultimate issue of voluntariness is a question of law subject to plenary review, we will accept the district court's subsidiary findings of fact unless they are "clearly erroneous." United States v. Garcia, 983 F.2d _______________________ 1160, 1167 (1st Cir. 1993). Further, we will uphold the district court's denial of a motion to suppress if it is supported by any reasonable view of the evidence. Id. ___ Applying these standards to the three factors allegedly requiring suppression of Burns' statements -- Bethel's alleged promise, his choice of interrogation site, and Burns' mental state -- we conclude that the District Judge correctly denied her motion to suppress. First, while Burns testified that Bethel promised not to arrest her if she agreed to be interviewed, the Magistrate Judge who presided at the suppression hearing accepted Bethel's contrary testimony and found that he had never made such a promise. Since the record contains sufficient evidence to support the Magistrate Judge's finding, the District Judge's acceptance of this finding was not clearly erroneous. See ___ United States v. Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990) _____________________________ ("Where there are two competing interpretations of the evidence, the district court's choice of one of them cannot -13- 13 be clearly erroneous."). Accordingly, Bethel's alleged promise not to prosecute Burns plays no role in our evaluation of whether her statements were voluntary. Second, we reject Burns' claim that Bethel chose an inherently coercive setting for the interview. The record amply supports the Magistrate Judge's conclusion that Burns agreed to be interviewed at the post office after being informed that she was not under arrest and after voluntarily waiving her Miranda rights. Moreover, Burns _______ worked at the post office, and so was intimately familiar with the site Bethel chose for the interview. Given that Burns agreed to be interviewed in familiar surroundings after being advised that she was under no obligation to speak, we cannot accept her claim that Bethel's decision to conduct the interview at the post office was inherently coercive. Finally, Burns contends that her statements were involuntary because they were a product of her weakened mental state. Burns correctly conceded at the suppression hearing that, absent some evidence of coercive police conduct, the court could not find that her weakened mental state rendered her statements involuntary. See Colorado v. ___ ___________ Connelly, 479 U.S. 157, 163-67 (1986); United States v. ________ _________________ -14- 14 Victoria-Peguero, 920 F.2d 77, 88 (1st Cir. 1990), cert. ________________ _____ denied, 111 S. Ct. 2053 (1991). Since we have already ______ rejected Burns' contention that Bethel's conduct was coercive, we must reject her state of mind argument as well. C. Reading from the Wrong Indictment _________________________________ Burns claims that the District Judge committed reversible error by mistakenly reading from a superseded indictment when he described the charged offenses in his preliminary jury instructions. Because Burns did not object to the Judge's preliminary instructions, we are limited to "plain error" review. See Fed. R. Crim. P. ___ 52(b). Accordingly, we will not reverse her conviction unless: (1) the Judge erred; (2) his error was "clear" or "obvious"; and (3) the error affected Burns' "substantial rights," which in this case means that the claimed error probably affected the jury's verdict. See United States v. ___ ________________ Olano, 113 S. Ct. 1770, 1777-78 (1993). Here, because Burns _____ has failed to show that the court's error affected her substantial rights, her claim fails. Although the District Judge mistakenly read from the original indictment during his preliminary -15- 15 instructions, this error could not have affected the jury's verdicts. First, each of the original indictment's two counts tracked the language of the embezzlement statute and described each embezzlement's approximate date and place. Second, the only difference between the two indictments is that the original indictment identified the embezzled test mailings solely by listing their fictitious addresses, whereas the superseding indictment also identified the payors and check numbers of the rebate checks that the mailings contained. Since the original indictment provided Burns with enough information about the charged offenses to both prepare for trial and avoid double jeopardy, the additional information contained in the superseding indictment is mere surplusage. See United States v. Serino, ___ _______________________ 835 F.2d 924, 929 (1st Cir. 1987). Moreover, the Judge's failure to read this surplusage to the jury could not have affected its verdicts because the contents of the embezzled test mailings were not in dispute. See United States v. ___ _________________ Yefsky, 994 F.2d 885, 892-94 (1st Cir. 1993) (trying the ______ defendant on an indictment containing insufficient detail concerning the charged offense was harmless error where defendant received advance notice of the government's trial -16- 16 theory and defendant had an adequate opportunity to respond at trial).3 D. Hearsay _______ Burns next contends that the District Judge improperly excluded as hearsay certain testimony she offered to impeach the testimony of another witness. Early in her case, Burns called her co-worker and friend, Cathy Larsen, as a character witness. On cross-examination, Larsen stated that she had visited Burns after Bethel had confronted her about the missing mailings. Larsen then testified that, while discussing the theft of the test mail, Burns told her that she "had done something stupid," was "embarrassed and ashamed" and apologized for her conduct. After calling several other witnesses, Burns called her roommate, Karen King. King, who had been present with Burns during Larsen's visit, testified: ____________________ 3 Burns also argues that she was tried on the wrong indictment. However, this argument does not merit extended discussion because it is not supported by the record. At the close of the case, the judge instructed counsel to review both the indictment and the jury verdict form before they were submitted to the jury. The record is devoid of any suggestion that counsel failed to ensure that it was the superseding indictment that was submitted. We thus have no reason to determine whether Burns' conviction would have to be reversed if the jury had been asked to render its verdicts on the original indictment. -17- 17 Q. On that night did Lisa make any statement saying she had taken checks? A. Never. The prosecutor objected to King's answer, claiming that the answer was hearsay. Defense counsel responded that he was offering the testimony not to establish that Burns had never taken the checks, but to impeach Larsen's testimony that Burns had made the statements. The Judge sustained the prosecutor's objection. On appeal, Burns contends that exclusion of this testimony was reversible error. We agree that King should have been allowed to testify that Burns never admitted to taking the checks. When the prosecutor elicited testimony from Larsen about Burns' statements, the prosecutor put those statements in dispute. Burns then was entitled to produce testimony from another of the meeting's participants to refute the prosecutor's version of what was said. Such testimony is not hearsay because it was not offered to prove the truth of Burns' out-of-court statements. Since King was prepared to testify concerning her own observations of what was said during the meeting, her testimony should have been admitted. Although the trial judge erred, we decline to reverse Burns' conviction on this basis because his error was harmless. See Fed. R. Crim. P. ___ -18- 18 52(a). Burns did not challenge the prosecutor's well-supported claim that she took the test mailings. Under these circumstances, her statements to Larsen were harmful only to the extent that they might undermine her claim that she was so intoxicated when she took the checks that she did not remember doing so. Even for this purpose, however, the statements are of limited probative value. Burns allegedly made the statements after she was confronted by Bethel and accused of taking the mailings. Having been so accused, and thus supposedly learning what she had done, it was entirely consistent with her intoxication defense for her to have expressed shame to her friends. Given the limited value of Larsen's testimony, the fact that Burns was denied the opportunity to challenge it could not have affected the jury's verdict. The harmlessness of the Judge's error is underscored by another fact -- that the prosecution did not need to rely on Larsen's testimony to establish that Burns acted with criminal intent. In her statements to Bethel, Burns acknowledged taking the test mailings and described how she did so in detail. It was this testimony, far more than Larsen's, that demolished Burns' claim that she was too intoxicated to remember taking the test mailings. Accordingly, it was harmless error for the Judge to exclude King's testimony about her recollection of Burns' -19- 19 statements to Larsen. See, e.g., United States v. Burke, 948 _________ ________________________ F.2d 23, 27-28 (1st Cir. 1991). E. The Intoxication Instruction ____________________________ Burns' final claim is that the District Judge's intoxication instruction unconstitutionally required her to prove that she acted without criminal intent. The Judge gave the following instruction on Burns' intoxication defense: Now, the defendant claims that she was ____________________ so far overcome by the use of alcohol ________________________________________ that it was impossible on the occasions ________________________________________ for her to form the required specific ________________________________________ intent, as I have just defined that ______ intent to you. I instruct you that you may consider evidence of alcohol use by the defendant, along with all of the other evidence, in deciding whether the government has proven beyond a reasonable doubt that the defendant had the requisite intent to, as I have described that to you. (Emphasis added). Burns contends that the phrase "defendant claims ... it was impossible" suggested that Burns was required to prove that she acted without criminal intent. We disagree. The intoxication instruction merely described the degree to which Burns' cognitive capacity must have been impaired before her alcohol use could support a finding of not guilty. Immediately after instructing the jury on the issue, the -20- 20 Judge reminded the jury that the prosecution still had to prove that Burns acted with criminal intent. When the two instructions are read together, they adequately apprised the jury that the prosecution had the burden of establishing beyond a reasonable doubt that Burns' alcohol use did not prevent her from intentionally committing the charged offenses. Accordingly, we reject Burns' challenge to the Judge's intoxication instruction.4 For the foregoing reasons, Burns' conviction is Affirmed. Affirmed. _________ ____________________ 4 The prosecution contends that Burns had no right to an intoxication instruction because intoxication is a diminished capacity defense barred by the Insanity Defense Reform Act of 1984, 18 U.S.C. 17. See United States v. ___ _________________ Saban-Gutterrez, 783 F. Supp. 1538, 1545, n.7 (D.P.R. 1991), _______________ aff'd, 961 F.2d 1565 (1st Cir. 1992) (unpublished opinion); _____ United States v. White, 766 F.2d 22, 24 (1st Cir. 1985). _______________________ Given our holding in the present case, we express no opinion on this issue. -21- 21